# Southern Railway Co. *v.* Shields, Adm'r, Etc.

*Action for Damages by Employe for Injury from Negligence of Co-employe.*

1. *Employe of a railroad company, when is not guilty of contributory negligence in causing injury to himself.*—Where an employé of a railroad company is ordered by another employé, having superintendence, to stop a moving car in a certain way, which as a matter of fact was unusual and dangerous, and he makes the attempt and is injured thereby, he is not guilty of contributory negligence, as a matter of law, in attempting to obey the order, if he had been in the service only a month, and had never seen an attempt made to stop a car under the circumstances existing when this attempt was made, and when the attempt did not to his inexperience involve obvious danger,—risk which a prudent man would not incur; especially as he had the right to rely, to some extent, on the greater knowledge and experience of the superintendent, and to assume that the superintendent would not expose him to unnecessary peril.

2. *Negligence and contributory negligence, when questions for the jury.*—Where a suit is brought against a railroad company to recover damages for negligent injury, and the plea of contributory negligence is interposed, if there is evidence tending to show negligence on the part of the company, and if the evidence fails to show, as a matter of law, that the defendant was guilty of contributory negligence, both the questions of negligence and contributory negligence should be referred to the jury.

APPEAL from the City Court of Birmingham.

Tried before the Hon. H. A. SHARPE.

The facts of this case are fully stated in the opinion.

[Southern Railway Co v. Shields, Adm'r, Etc.]

It may be well to say that the word "leads" as used in the opinion means two upright parallel pieces of timber of considerable height, placed at the front end of the car, between which the pile was placed when being driven, and with which also the hammer for driving the piles was connected.

SMITH & WEATHERLY, for appellant, contended, that the defendant was entitled to the general charge and cited the following authorities: Ray on Negligence, 137; *Bivins v. Ga. Pac. Ry. Co.*, 96 Ala. 325; *R. & D. R. R. Co. v. Bivins*, 15 So. Rep. 515; *Prior v. L. & N. R. R. Co.*, 90 Ala. 32; *Handlien v. Ry. Co.*, 32 M. W. 4; *E. T. V. & G. Ry. Co. v. Sudderth*, 12 S. E. 682; Raepalgae & Mac's Dig. Ry. Law, 26; *Williams v. Woodward Iron Co.*, 17 So. Rep. 517; 98 Ala. 570. (2). On the proposition of voluntary assumption of danger.—*So. Ry. Co. v. Arnold*, 21 So. Rep. 954; *Western Ry. Co. v. Williams*, 21 So. Rep. 829; *Sanders v. McGehee*, 21 So. Rep. 1006; *Andrews v. B'ham Min. Ry. Co.*, 12 So. Rep. 432. (3). On the rulings and pleadings *R. & D. R. R. Co. v. Weams*, 97 Ala. 270; *L. & B. R. R. Co. v. Trammell*, 98 Ala. 350.

JOHN T. SHOUGART and LANE & WHITE, *contra.*—If the master ordered a servant into a situation of danger and he obeys and is thereby injured the law will not deny him remedy against the master on the ground of contributory negligence unless the danger was so glaring that no prudent man would have entered into it. *Schroeder v. Chicago & Acton R. R. Co.*, 56 A. & E. R. R. Cases, 442; Wood's Law of Master & Servant, Sec. 359; *Kansas City, M. & B. R. R. Co. v. Burton*, 97 Ala. 254. (2). We submit is too narrow a view to confine the negligence of the superintendent to the order alone which he gave to move the car. The rule laid down is that the order may be harmless, yet if given in connection with such conditions as to make it hurtful as in this case the master will be liable.—Wallace & Roberts, 3 Ed. 276; *Millwood v. Midland R. R. Co.*, 142 B. D. 68.

McCLELLAN, C. J.—This action was instituted by Wm. C. Savage against the Southern Railway Co. There

was judgment for plaintiff below, and the defendant appealed. Savage subsequently died and the cause has been revived here in the name of Shields, the administrator of his estate.

The complaint contained thirty-three counts. A number of these were held bad on demurrer, and the affirmative charge for defendant was given on all the rest except the 4th and 6th. Each of the counts thus left in the case was intended to present a case under the second subdivision of section 2590 of the Code of 1886, as for an injury caused by the negligence of an employé of the defendant who had superintendence intrusted to him, whilst in the exercise of such superintendence. There was a demurrer to each of these counts as amended, which was overruled. The only objection made by the demurrer which is insisted on here is that the counts do not show superintendence, and negligence producing the injury whilst in its exercise. The counts are not open to this objection. They do show that one Rhyne had superintendence intrusted to him in respect of a part of the crew and certain operations of a pile driver; that plaintiff, Savage, belonged to that part of the crew and that the injury was received by him while engaged in an operation of the pile driver of which Rhyne had charge and superintendence, and in respect of which it is alleged that, Rhyne gave plaintiff a negligent order in the execution of which he received the injuries complained of. The demurrers were properly overruled.

The evidence shows that plaintiff was injured while endeavoring in obedience to an order given him by Rhyne to stop or scotch the car carrying the pile driver by inserting the beveled end of a crowbar on the rail in front of a wheel of the car. The attendant circumstances were these: The car with the pile driving outfit upon it was on a trestle which was about fifteen feet high. The track was down grade from the car to the end of the trestle, about seventy-five feet, and beyond. Piles were to be driven into the ground at particular places beneath the trestle. The car had stopped four or five feet short of the particular place where the first pile was to be driven. The piles to be used were lying on the

ground in front of the car. It was necessary to hoist the piles and place them in a position in the leads of the pile driver to be driven into the ground. On the car as a part of the pile driving apparatus was a steam engine which operated a drum. The piles were to be hoisted by attaching lines or cables to them, passing the lines through a pulley at the top of the leads and on to this drum to which they were attached so that they would be drawn in by its revolutions. The car had, as we have indicated, to be moved forward four or five feet to be in the position required to drive the pile. There were at the time no appliances on the car itself either to move it or to stop it once in motion. There were two possible ways of getting it forward on this occasion to the desired point and stopping it there. One was to prize or pinch the rear wheels forward with a crowbar and to stop it at the proper place by placing the beveled end of a crowbar on the rail in front of a forward wheel. This was the usual and customary and the safest way. By it the car could be moved so slowly and gently that the man with a crowbar in front could ordinarily stop it with accuracy, ease and safety. The other possible way under the circumstances existing on the occasion under inquiry was to let the force and tension in the cables incident to drawing a pile toward the car and hoisting it draw the car forward till it reached the proper place, and then stopping it by the use of the crowbar as indicated above. This was an unusual and dangerous way to move and stop the car, according to a tendency of the evidence, especially when the movement, as in this instance was down grade; and it would seem, indeed, to require no evidence to show that it was more difficult and perilous to scotch and stop a car by chocking its front wheel with a crowbar held in the hand, when the car was being pulled forward by the cables attached to a heavy log lying some distance in front of it, than to so scotch and stop one being gradually pinched along with a crowbar under a rear wheel: In the latter case, the car having been set in easy and slow motion by the pinching crowbar, it would only be necessary to overcome its own momentum, while in the former not only its own motion would have to be overcome, but also the

force and tension of the cables attached to the pile. And moreover, very naturally the motion would begin more abruptly in the former case than in the latter and be more rapid, and this even though the drum were stopped as soon as motion had been imparted to the car. On the occasion in question the latter method was adopted. The evidence tends to show that, having had the cables attached to the pile in front and to the drum in rear of the leads, and intending while drawing the pile toward the car and eventually hoisting it, by the same force to draw the car forward and have the motion thus imparted to it arrested at the point it was necessary to have it stand. Rhyne ordered the engine and drum to be set in motion and the pile to be drawn to the car and then up into the position it had to be placed for driving, and the engine having been started, he then ordered the plaintiff to catch the car with his crowbar, scotch and stop it. Plaintiff attempted to obey this order, but, as a tendency of the evidence shows, the motion of the car was so violent that when he put the end of his crowbar on the track in front of and against the wheel it slipped for a time, and then there was a sort of jerking increase of the movement, the wheel caught the crowbar, wrenched it out of his hands in such way that he was knocked down by it with one of his legs across the rail under the crowbar, and that the wheel mounted the bar as it lay across his leg and ran up it until it was directly above his leg, crushing and mashing it so that amputation was necessary. On these tendencies of the evidence, if the jury found, as it was open to them to do, in line with them, it is fairly inferable that the plaintiff's injuries proximately resulted from the attempt to move the car in this way in connection with Rhyne's order for him to stop it while being moved in this way; and the danger to a person attempting to stop a car with a crowbar which was being thus moved the jury might further have found to have been so apparent to the experienced mind of Rhyne, and was so calculated from his point of view to result in injury that he was guilty of negligence in ordering the plaintiff to catch or scotch and stop the car under all the circumstances. Hence our conclusion that the refusal of the trial court to give the affirmative

charge for defendant cannot be assailed on the ground that there was no evidence that Rhyne was negligent in giving the order.

Nor do we think as matter of law plaintiff was guilty of contributory negligence in attempting to obey the order. He had been in the service only a month. He had never seen an attempt made to stop a car under the circumstances existing when this attempt was made. The attempt did not to his inexperience involve obvious danger, risks which a prudent man would not incur; and he had a right to rely to some extent upon Rhyne's greater knowledge and experience and upon the assumption that Rhyne would not expose him to unnecessary peril, or, at least, it was for the jury to so find if they believed the facts which the tendencies of the evidence favorable to plaintiff went to establish. And the trial court properly left both questions—as to Rhyne's negligence and Savage's contributory negligence—to the jury.

Affirmed.